# In the United States Court of Federal Claims

No. 09-832C

(Filed: August 31, 2010)

* * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| RAM ENERGY, INC., | Offshore oil and gas lease; Motion to dismiss; RCFC 12(b)(1); Statute of Limitations; Restitution; Accrual suspension doctrine; "Inherently unknowable." |
| *Plaintiff,* | |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

* * * * * * * * * * * * * * * * * * *

 *Steven W. Bugg* and *Beauchamp M. Patterson*, Oklahoma City, OK, for plaintiff.

 *Allison Kidd-Miller*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Patricia M. McCarthy*, Assistant Director, *Jeanne E. Davidson*, Director, *Tony West*, Assistant Attorney General. *Daniel W. Kilduff*, Office of the Solicitor, United States Department of the Interior, Washington, DC, of counsel.

---

OPINION

---

BRUGGINK, Judge.

 This is a contract action brought by a part owner of a government-issued offshore oil and gas lease. In a related action, we previously held that the government committed a total breach of this and other related lease contracts. *See Amber Res. Co. v. United States*, 68 Fed. Cl. 535 (2005) ("*Amber I*"). Co-owners of the other leases sought restitution in lieu of lost profits and recovered. *See Amber Res. Co. v. United States*, 73 Fed. Cl. 738 (2006) ("*Amber II*"); *Amber Res. Co. v. United States*, No. 02-30 (Fed. Cl.

Jan. 11, 2007) (order for Rule 54(b) Judgment). The plaintiff here, RAM Energy, Inc. ("RAM"), was not a party to the *Amber* litigation and instead brought this separate action. Pending is defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). The motion is fully briefed. Oral argument is deemed unnecessary. For the reasons set out below, the motion is granted.

BACKGROUND

The facts giving rise to this dispute have been recounted in the earlier *Amber* opinions and will be only briefly summarized here.[1] Some thirty years ago, the United States leased sections of the ocean floor off the coast of California to private businesses for oil and gas exploration. RAM is the successor-in-interest to an undivided 21.8% interest in lease OCS-P-0433 ("Lease 433"). In 1990, Congress adopted amendments to the Coastal Zone Management Act ("CZMA"), 16 U.S.C. §§ 14561-65 (2006). The CZMA amendments gave the State of California the right to require the Minerals Management Service ("MMS") to review offshore development activities via a "consistency determination" process to ensure that they were consistent with California's own coastal development regulations. This legislation delayed and severely limited commercial exploration and extraction, essentially rendering the leases worthless. Consequently, many of the lessees sued here in 2002. We agreed with those plaintiffs that the government's actions amounted to a total breach, entitling the plaintiffs to recover. RAM was not a plaintiff in that litigation but filed a complaint on December 4, 2009, seeking restitution for its partial ownership interest in Lease 433. The government moves to dismiss the complaint as time barred under 28 U.S.C. § 2501 (2006).

DISCUSSION

I. Standard of Review

Generally, in assessing a RCFC 12(b) motion to dismiss, the court must presume that the undisputed factual allegations included in the complaint are

---

[1] *Amber I*, 68 Fed. Cl. 535; *Amber II*, 73 Fed. Cl. 738; *Amber Res. Co. v. United States*, 538 F.3d 1358 (Fed. Cir. 2008); *Amber Res. Co. v. United States*, 87 Fed. Cl. 16 (2009).

2

true and draw all reasonable inferences in his favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Despite these presumptions, once the court's subject matter jurisdiction is challenged, the party seeking to invoke it bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

II. The Motion To Dismiss Need Not Be Treated As Motion For Summary Judgment.

As an initial matter, because the government's motion relies on two documents which were not attached to the complaint, RAM contends that the motion should be converted to one for summary judgment and it be given an opportunity for discovery. It argues that RCFC 12(d) requires us to convert the government's motion to one for summary judgment under rule 56 because "the [government] has relied upon both the MMS letter dated July 2001, and the updated suspension request dated April 20, 2004, both attached as exhibits to the motion." Pl.'s Resp. to Mot. to Dismiss at 16-17. We disagree.

RCFC 12(d) states, in pertinent part:

> If, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The text of RCFC 12(d) makes clear that conversion pursuant to 12(d) is proper only if a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings has been filed and evidence outside the pleadings has been considered by the court. Conversion of a 12(b)(1) motion to dismiss into a summary judgment motion is not provided for by RCFC 12(d). In addressing jurisdictional challenges, the court is at liberty to consider all the evidence brought to its attention in evaluating the government's motion to dismiss, even matters outside of the pleadings. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985). Accordingly, the

government's motion to dismiss need not be treated as a motion for summary judgment.[2]

II. Statute of Limitations

A claim falling within the jurisdiction of the Court of Federal Claims typically must be brought within six years of the date that the cause of action accrued. 28 U.S.C. § 2501. Unlike most statutes of limitation, which in other venues are treated as affirmative defenses, section 2501's six-year limitation on actions against the United States is a jurisdictional requirement and cannot be waived. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130, 134 (2008). Furthermore, it is a condition of the government's waiver of sovereign immunity and thus must be strictly construed. *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). Accordingly, if a petition on a claim is filed more than six years after such claim has accrued, the petition must be dismissed.

*A. RAM's Claim Accrued No Later Than July 2001.*

In order to determine whether RAM's claim is time-barred, it is necessary to determine when its claim first accrued. Generally, a claim accrues when "all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action." *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1455 (Fed. Cir. 1997). For breach of contract actions, the claim accrues at the time of the breach. *Brighton Vill. Assocs. v. United States*, 52 F.3d 1056, 1060 (Fed. Cir. 1995).

---

[2] On the assumption that the motion will be treated under Rule 56, plaintiff also seeks discovery concerning the government's treatment of the leases post-*Norton*. We deny the request. First, we are not converting the motion to one brought pursuant to Rule 56. Nor does plaintiff challenge the authenticity of the two documents on which the government relies. Finally, the government is entitled to rely on undisputed facts to argue that the limitations period has run. As we explain below, none of the issues raised by the request undercut the premise behind the motion.

4

We agree with the government that RAM's claim accrued in July 2001, when the United States Department of the Interior ("Interior"), pursuant to the district court's ruling in *California v. Norton*, 150 F. Supp. 2d 1046, 1053 (N.D. Cal. 2001) ("*Norton I*"), applied the CZMA amendments to revoke previously granted suspensions of the leases at issue, including Lease 433. The other lessees brought their breach of contract claims between 2002 and 2005, alleging that the procedures and standards governing the grant of requested suspensions when the leases were issued were materially altered. The Federal Circuit ultimately affirmed this court's ruling in favor of the lessees, holding that the breach occurred when "the injunction entered by [*Norton I*] effectively requir[ed] MMS to apply the provisions of the 1990 CZMA amendments to the leases in question and MMS's implementation of [*Norton I*] . . . ." *Amber IV*, 538 F.3d at 1370. RAM concedes that the instant case is directly related to *Amber I* as both "involve claims for breach of the same offshore oil and gas lease." Notice of Directly Related Cases at 1. The only logical conclusion, then, is that the breach of contract concerning Lease 433 also occurred in 2001.

Nevertheless, RAM offers two alternative dates on which its claim accrued. The first is April 9, 2009, when the Federal Circuit issued the mandate affirming rescission of the leases. The second is November 15, 2005, when this court issued *Amber I*, holding that the government's application of the CZMA constituted a breach. If either date is the correct one, the action would be timely.

RAM first contends that because it seeks restitution and because rescission of Lease 433 was a "necessary pre-requisite to any claim for restitutionary damages," it could not bring this cause of action until rescission of the leases occurred. Pl.'s Resp. to Mot. to Dismiss at 8. According to RAM, such rescission did not occur until the Federal Circuit's mandate on April 9, 2009. Until the Federal Circuit issued the mandate affirming rescission of the leases, RAM argues, "there was no assurance that . . . Lease 433 would be rescinded." Pl.'s Resp. to Mot. to Dismiss 9. We reject this argument. Presumably, under this view, if the other lessees had never brought suit, the limitations period would never run.

First, rescission of Lease 433 was not the breach committed by the government. Rather, it was the remedy sought by the *Amber* plaintiffs and granted by this court for the breach in *Amber I*. It thus could not have been a "pre-requisite" to any cause of action. Despite RAM's characterization of its

5

cause of action as one for "restitution," the court is unaware of any legal doctrine or precedent under which restitution itself can be deemed a cause of action. Rather, in a contract context, it is a potential remedy in the event a breach is found. *See Acme Process Equip. Co. v. United States*, 347 F.3d 509, 530 (Ct. Cl. 1965) ("[Restitution is] an alternative remedy for breach of contract in an effort to restore the innocent party to its pre-contract status quo . . . ."). Restitution can be granted by the court upon its determination that the breach is total and material. *See Amber I*, 68 Fed. Cl. at 560 (awarding plaintiffs $1,104,227,348 in damages as restitution for the bonus payments made for the breached leases). Thus, it is illogical to suggest that rescission of Lease 433 was a "necessary pre-requisite" to bringing the present cause of action. The government's breach occurred in 2001, immediately triggering RAM's right to bring this cause of action for breach of contract and seek restitution. *See Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (a cause of action in a Tucker suit accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit.").

RAM concedes that this case and *Amber I* involve claims for breach of the same offshore oil and gas lease, yet it offers no justification for its failure to initiate a suit much earlier. In effect, RAM is urging the court to postpone the accrual of its claim until the Federal Circuit gave the assurance that it was entitled to restitution. Risk of uncertainty is inherent in any litigation, however, and it certainly does not defer the running of the limitation period. *Cf. Wilcox v. Executors of Plummer*, 29 U.S. (4 Pet.) 172, 177 (1830) ("[R]ight to sue is not suspended, until subsequent events shall show the amount of damage or loss."); *Fallini v. United States*, 56 F.3d 1378, 1382 (Fed. Cir. 1995) ("[I]t is not necessary that the damages from the alleged [wrong] be complete and fully calculable before the cause of action accrues.").

*B. Accrual Suspension Does Not Apply To RAM's Claim.*

RAM argues in the alternative that its claim did not accrue until 2005 when this court issued the *Amber I* decision. In *Amber I*, we held that the lessees were entitled to treat the breach as an anticipatory repudiation and obtain restitution of the bonus payments made for the leases. 68 Fed. Cl. at 538. According to RAM, the parties "did not know and could not have known," until *Amber I* was issued, that the government's application of the CZMA amendments constituted a breach.

RAM invokes the "accrual suspension doctrine," arguing that, even if the breach occurred in 2001, it did not cause RAM's claim to accrue because the existence of the breach remained unknown to RAM. Because "the impact of the application of the CZMA amendments on the individual rights of the lessees was unknown," RAM asserts, the accrual of its claim was suspended until 2005, when this court announced its ruling in *Amber I*. Pl.'s Resp. to Mot. to Dismiss at 12.

In two limited circumstances the accrual suspension rule may prevent the running of the limitations period "when an accrual date has been ascertained, but the plaintiff does not know of the claim." *Ingrum v. United States*, 560 F.3d 1311, 1314-15 (Fed. Cir. 2009). Plaintiff must show either that defendant "concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the time the cause of action accrued." *Id*. at 1315 (quoting *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc)); *see also Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008). The *Ingrum* court further clarified that, although the test has occasionally been stated as whether the claimant "knew or should have known that a claim existed," that articulation is to be applied consistently with the test described as inherent unknowability. *Id*. at 1315 n.1.

Applying *Ingrum*, this court explained that, "absent active concealment by defendant, accrual suspension requires what is tantamount to sheer impossibility of notice." *Rosales v. United States*, 89 Fed. Cl. 565, 578 (2009) (citiing *Japanese War Notes Claimants Assn. v. United States*, 373 F.2d 365, 359 (Ct. Cl. 1967)). Simply put, there must be "nothing to alert one to the wrong at the time it occurs." *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 61-62 (2009). The statute of limitations thus starts running, and continues to run, at the time of breach unless the possibility of notice is foreclosed by, for example, the complete absence of relevant evidence. *See Roberts v. United States*, 312 Fed. Appx. 340, 342 (Fed. Cir. 2009) (affirming dismissal of plaintiffs' claims as untimely under 28 U.S.C. § 2501, where plaintiff failed to demonstrate that his military service records were wholly unavailable).

Therefore, in evaluating RAM's first argument that it did not know and could not have known of its claim until the *Amber I* decision, we are faced with the question of whether the breach of contract, namely, the application of the 1990 CZMA amendments to the lease suspension determinations, was "inherently unknowable" in 2001. Based on the standard articulated above, it

plainly was not. The Department of the Interior provided notice of *Norton I* to RAM's operator and *Amber* plaintiff, Aera Energy, LLC ("Aera") on July 2, 2001. Def.'s Ex. A. This put RAM on notice of the breach. *See* 30 C.F.R. § 250.105 (2010) (defining lease operator as "the person the lessee(s) designates as having control or management of operations on the leased area or a portion thereof."); *see also* Def.'s Ex. B (letter from Aera to Interior summarizing the events leading to the breach and copying RAM). Moreover, that the breach was not inherently unknowable at the time is evidenced by the fact that the other lessees brought suit in 2002.

Nonetheless, RAM asserts that the legal effect of the application of the CZMA amendments to Lease 433 was "not obvious," and that it could not have known that it had a claim for anticipatory repudiation until the *Amber I* decision. RAM analogizes its case to *Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005), to support its position that the accrual of a cause of action should be suspended for those who "could not assert their claims until a necessary element of their claims was established by a separate tribunal . . . ." Pl.'s Resp. to Mot. to Dismiss at 14.

*Samish* is distinguishable. In *Samish*, the Samish Tribe initially brought a cause of action for past benefits in the Court of Federal Claims. This court held that the Samish's past benefits claim was time barred. *See Samish Indian Nation v. United States*, 58 Fed. Cl. 114, 118 (2003). It involved a claim which, despite the claimant's awareness of the government's breach, did not accrue until a threshold standing issue had been resolved by a separate tribunal. On appeal, the Federal Circuit reversed. In order to have standing to prosecute such a claim, the Tribe first had to establish that it was a historically recognized tribe. 419 F.3d at 1369. That, however, could only be done in a proceeding before the district court, in a review of the recognition decision of the Secretary of the Interior. The Federal Circuit held that the Samish's claim did not accrue until the district court entered its final judgment in favor of the Samish, enabling them to establish standing here. *Id*.

By contrast, the *Amber I* decision did not resolve any threshold issue that could not have been resolved in this proceeding. In fact, both cases involve claims for breach of the same offshore oil and gas lease. Nothing precluded RAM from joining the other lessees in the *Amber* litigation or even bringing its own claim.

8

RAM also attempts to rely on *Neely v. United States*, 546 F.2d 1059 (3d Cir. 1976), by stating that the accrual suspension rule applies where "the underlying basis for the claim isn't known (or can't be known) until there is first a legal determination establishing the claimant's rights." Pl.'s Resp. to Mot. to Dismiss at 12. The court in *Neely*, however, was faced with a situation in which the claimants had no right to bring suit until adverse precedent in the Third Circuit was reversed by the Supreme Court. *Id*. at 1068-69. The court in *Neely* explained that the accrual suspension rule applies "if the claim was 'inherently unknowable' at accrual," and that, in that instance, it was. *Id.* In stark contrast to *Neely*, no adverse precedent precluded RAM's claim prior to *Amber I*.

To corroborate its alleged unawareness of the breach of contract claim in 2001, RAM argues that the legal effect of the application of the CZMA amendments to Lease 433 was "not obvious" even to the court that rendered the decision in *Norton I*. According to RAM, the fact that the district court in *Norton I* directed MMS to obtain and evaluate updated suspension requests from the lessees demonstrated the district court's view that its ruling did not cause a breach of contract and that the leases remained in effect. The *Norton* court, however, was not faced with the question of whether the application of the CZMA amendments constituted a breach of contract. The only question before the district court was whether the 1990 CZMA amendments required Interior to perform a consistency determination prior to granting the requested suspension. *See Norton I*, 150 F. Supp. 2d at 1053. The district court could not have resolved a question not before it, nor did it attempt to do so.[3] Ultimately, RAM has to concede that it did not lack the necessary knowledge of relevant facts, but that it did not realize their legal significance until after this court's decision in *Amber I*, an argument that does not support the

---

[3] RAM also argues that the other lessees who commenced the *Amber* litigation proceeded with development plans and suspension requests necessary to maintain the leases. According to RAM, the lessees' continued cooperation with the government demonstrated their understanding that "the leases remained in full force and effect." Pl.'s Resp. to Mot. to Dismiss at 11. The lessees, however, made clear that they were cooperating under protest. *See Amber IV*, 538 F.3d at 1377. In any event, RAM does not and cannot argue that these actions concealed the fact that the government terminated lease suspensions, the action which this court and the Federal Circuit affirmed to be the breach. *See Amber IV*, 538 F. 3d at 1374.

9

suspension accrual doctrine. *See Petro-Hunt*, 90 Fed. Cl. at 62; *see also Catawba Tribe of S.C.*, 982 F.2d 1564, 1572 (Fed. Cir. 1993) (declining to apply the rule where "all the relevant facts were known . . . [but] the meaning of the law [] was misunderstood.").

RAM next argues that the government's affirmative assertions prevented it from knowing of the breach. According to RAM, the government reassured RAM regarding its continued obligation to review suspension requests and downplayed the negative impact of the consistency determination process. RAM admits, however, that MMS made known that its "future response to voluntary suspension requests would . . . include a consistency determination per the CZMA Amendments." Plf.'s Resp. To Mot. to Dismiss at 16. RAM also contends that the government did not suggest that the inclusion of a consistency determination would impair RAM's development activities.

Contrary to RAM's argument, these facts do not prove that the government "has concealed its acts with the result that [RAM] was unaware of their existence." *Ingrum*, 560 F.3d at 1315. The government took the litigation position that it had not materially breached the *Amber* leases, including Lease 433 and acted accordingly. *See Amber I*, 68 Fed. Cl. at 549-50. The pertinent "act" giving rise to the breach at issue was committed by Interior when it applied the CZMA amendments to revoke suspensions of Lease 433. RAM knew of this revocation. Therefore, the government's subsequent assertions as to the import of its future conduct, or lack thereof, are irrelevant. It was clear, as of the lease revocations in 2001, that the CZMA amendments had materially impacted the leases. *See Amber IV*, 538 F.3d at 1374.

In summary, RAM has failed to satisfy the demanding requirements of the accrual suspension rule. Because RAM was on notice in 2001 of the *Norton I* decision and Interior's subsequent revocation of granted suspensions pursuant to that decision, RAM's claim accrued immediately upon the government's breach.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED. The Clerk is directed to dismiss the complaint and enter judgment accordingly. No costs.

<u>s/Eric G. Bruggink</u>
Eric G. Bruggink
Judge